Simons, J.
(concurring). I agree with the majority’s conclusion that the school district policy, which requires all probationary teachers to submit to urinalysis to detect potential drug use prior to a decision on tenure, violates the proscription against unreasonable searches and seizures contained in the Fourth Amendment to the United States Constitution. Accordingly, I concur in the affirmance of the Appellate Division order.
I write separately, however, because the court’s decision reaches beyond the scope of the issues presented on appeal. Specifically, its reliance on State constitutional grounds to invalidate mandatory testing is unwarranted. The petitioner brought this article 78 proceeding in the nature of prohibition seeking primarily to enjoin the urinalysis tests as unauthorized under the terms of the teachers’ contract. The petition included a general allegation that the tests violated the teachers’ "constitutional” rights but it did not allege a violation of either the Fourth Amendment to the United States Constitution or article I, section 12 of the State Constitution. Petitioner alleges in its supporting papers only that the search violated the teachers’ Fourth Amendment rights. They did not argue the applicability of the State constitutional provision either in the courts below or before us. Under these circumstances, the court’s reliance on the State provision is not only contrary to procedural rules — too familiar to require citation —which govern this court, but is also an inappropriate imposition on the respondents and their counsel who, after defending the Board’s action against the only ground raised for some two years, now find the proceeding decided against them for reasons of which they were unaware and which they had no chance to address or refute. That amicus perfunctorily asserted on appeal petitioners’ entitlement to relief under the State Constitution adds nothing to the case; amicus cannot define the issues presented to the court. The court, by raising the argument and accepting it as controlling, has functioned as an advocate for the prevailing side rather than as a court.
I also object to the decision for a more fundamental reason. The majority’s opinion states that it relies on State constitutional grounds because the Supreme Court has not yet decided a case involving compulsory drug testing of public employees, because the lower courts which have considered the applica *72 tion of the Fourth Amendment to this issue have reached diverse conclusions, and because New York should appropriately apply its Constitution in the first instance to establish the standards applicable in this State, at the same time suggesting that the nature of a New York public employee’s expectation of privacy, may somehow differ from that of other citizens (majority opn, at 65). The opinion states its perception that the issue "is an important one which should be settled throughout the State and one on which resort to the Federal Constitution would not be dispositive since the practice, even if permitted by the Fourth Amendment, may not satisfy the requirements of the comparable provision of the State Constitution (NY Const, art I, § 12).” (Id.) Accordingly, the majority concludes that the order for mandatory urinalysis does not satisfy either the State or Federal Constitution (id., at 70).
Notwithstanding the general applicability of our State Constitution when it has been asserted as grounds for relief, we are governed, in the first instance, by national standards. As Justice Brennan has observed, the Federal Bill of Rights creates "a federal floor of protection and * * * the Constitution and the Fourteenth Amendment allow diversity only above and beyond this federal constitutional floor” (Brennan, Bill of Rights and the States: The Revival of State Constitutions As Guardians of Individual Rights, 61 NYU L Rev 535, 550 [1986] [emphasis in original]; see generally, Kaye, Dual Constitutionalism In Practice and Principle, 42 Rec A B City. NY 285, 304-309 [1987]). This being so, it would seem desirable, for the sake of uniformity, that we first determine that "floor” when we are asked to do so. That the issue before us has not yet been resolved by the Supreme Court and is unsettled in the lower courts is not a basis for refusing to rest our decision on the requirements of the Federal Constitution, as we perceive them (see, People v Payton, 45 NY2d 300, 312). Nor does the unsettled status of the Federal law alone permit us to invoke the State Constitution so that we may preempt the Supreme Court and avoid its upsetting our interpretation of the Federal Constitution.*
*73 I do not question that we may invoke the safeguards of the State Constitution and guarantee our citizens even greater protection than the Fourth Amendment provides under appropriate circumstances. If the issue had been raised, we would be justified in adopting a higher State standard to maintain a body of coherent and stable law — as we. sometimes, but not necessarily, do in the face of changes in Supreme Court rulings — or because of important considerations involving the legal institutions and environment in the State and our public policy process which theoretically enable us to "fashion workable rules for a narrower, more , specific range of people and situations” (Kaye, op. cit, 42 Rec A B City NY 308). In the past, we have generally refrained from reaching out to interpret article I, section 12 of our State Constitution when construing Fourth Amendment rights, however, and instead have sought to fashion search and seizure rules that promoted consistency in the interpretations given the parallel Federal and State clauses (see, People v P. J. Video, 68 NY2d 296, 303-304). We have "adopted independent standards under the State Constitution [only] when doing so best promotes 'predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens’ ” (id., at 304, quoting People v Johnson, 66 NY2d 398, 407, and listing cases decided under NY Const, art I, § 12). Typically we have done so when, in our opinion, the Supreme Court has modified its prior rulings to grant citizens less protection than they previously enjoyed (see, e.g., People v P. J. Video, supra; People v Johnson, supra; People v Bigelow, 66 NY2d 417, 427). In such instances, having formulated our State’s rules relying on earlier interpretations of the Fourth Amendment, we have seen no reason to conform them again as the Supreme Court changes the national standard. I obviously believe reliance on our State Constitution is justified in such instances. It is also justified if a party has asserted a violation of rights under both Constitutions (see, e.g., People v Class, 67 NY2d 431, 63 NY2d 491). Additionally, if the scope of the claimed Fourth Amendment protection is not settled as *74 a matter of law, we have decided the issue on State grounds, or both grounds, if they have been preserved (see, e.g., People v Hicks, 68 NY2d 234, 243). Finally, State grounds are decisive when only the State claim is raised (see, e.g., People v Gokey, 60 NY2d 309).
I recognize, as the majority’s string cites on page 66 indicate, that many older New York constitutional decisions gratuitously cited sections of the State Constitution along with the Federal grounds on which the decisions rested although the State grounds were not preserved. Those decisions were written when the Federal standard was clear or, in some instances, in a different climate, when the Supreme Court was "ahead” of the State courts. They reflect the obvious — that the Federal "floor” was controlling. The decisions are not pertinent in the context of cases such as this in which the court seeks to exercise its powers in conformity with the principles of People v P. J. Video (supra) and People v Johnson (supra) to find a State-wide standard of protection for New York’s public employees guaranteed by the State Constitution, which it anticipates may differ from the standard eventually adopted by the Supreme Court.
Moreover, without the benefit of a Supreme Court ruling or the argument of the parties on the subject, I am not prepared to join in the majority’s assumption that the expectation of privacy held by this State’s public employees in the act and product of urination so differs from that expectation held by other citizens of this Nation that an "independent State ground” should be invoked (see generally, 1 La Fave, Search and Seizure § 2.1, at 221-240 [1978] [discussing the. "expectation of privacy” test]). Nor does the majority advance any argument supporting its assumption that it does. If one of the justifications for applying State constitutional principles is that our State courts are in a better position to fashion workable rules responsive to the needs of our own citizens, and I accept that to be an appropriate consideration, we should await a case in which the arguments of our citizens concerning the unique circumstances in New York warranting an independent State standard are raised, rather than forestall Supreme Court determination of the national standard through reliance on an unpreserved State ground.
The traditional Federal constitutional precepts governing search and seizure require a holding in this case that the Board’s order falls below the "floor of Federal protection” and, *75 therefore, is unconstitutional. Such a determination makes it unnecessary for the court to now determine whether the State Constitution supports an independent standard of review (compare, People v P. J. Video, 68 NY2d 296, 303-304, supra) and we should not invoke State grounds without some recognized, principled basis for doing so.
Accordingly, I concur only in that part of the majority’s holding that rests on Federal constitutional grounds.
Judges Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur with Chief Judge Wachtler; Judge Simons concurs in a separate opinion.
Order affirmed, with costs.

 The rule of "independent State grounds” which controls the Supreme Court’s jurisdiction to review is stated in Michigan v Long (463 US 1032, 1041): "If a state court chooses merely to rely on federal precedents as it would on the precedents of all other jurisdictions, then it need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached. In this way, both justice and *73 judicial administration will be greatly improved. If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds,- we, of course, will not undertake to review the decision” (emphasis added). This concurrence makes explicit, of course, that which appears in doubt from reading the majority opinion, i.e., this case has been decided on independent State grounds (cfi., People v Stith, 69 NY2d 313, 316).