OPINION OF THE COURT
Chief Judge Wachtler.
Defendants in these cases were arrested for drunk driving offenses in separate and unrelated incidents. In each case the police took a single breath sample using a Smith & Wesson Model 900A Breathalyzer machine, and the test indicated a blood alcohol content in excess of the legal limit (see, Vehicle and Traffic Law § 1192 [1], [2]; § 1195 [2]). Defendants then moved to suppress the breathalyzer test results arguing, as they do in this court, that because the administration of the tests necessarily destroyed the breath samples, the Due Process Clause of the State Constitution (NY Const, art I, § 6) required that the police take and preserve a second sample for later use by defendants.
*378 In California v Trombetta (467 US 479, 485) the Supreme Court of the United States held that the failure of the police to take and preserve a breath sample for later testing does not deprive criminal defendants of "a meaningful opportunity to present a complete defense”, and thus does not violate the Federal Constitution. In each of the cases now before us, however, the hearing court held that the taking and preservation of a second breath sample, which it found to be a "simple and accurate” procedure, was required under the New York State Constitution, and therefore suppressed the primary breathalyzer test results. The Appellate Term reversed and denied defendants’ suppression motions, on the authority of People v Molina (128 Misc 2d 638 [App Term]). A Judge of this court granted defendants leave to appeal. We now affirm Appellate Term’s denial of defendants’ suppression motions, and adopt the reasoning of California v Trombetta (supra) as a matter of State constitutional law.
We have long recognized that while this court is, of course, bound by the decisions of the Supreme Court in matters of Federal law, " 'in determining the scope and effect of the guarantees of fundamental rights of the individual in the Constitution of the State of New York, this court is bound to exercise its independent judgment and is not bound by a decision of the Supreme Court of the United States limiting the scope of similar guarantees in the Constitution of the United States’ ” (People ex rel. Arcara v Cloud Books, 68 NY2d 553, 557, quoting People v Barber, 289 NY 378, 384).
Recently, in People v P. J. Video (68 NY2d 296), we reviewed some of the many factors and considerations relevant to this court’s independent judgment of whether, in a particular case, the New York State Constitution provides greater protection than is afforded by the Federal Constitution. In that case we first identified "interpretive” factors, which focus on differences in the text, structure, or historical underpinnings between the State and Federal Constitutions (id., at 302).
However, in People v P. J. Video (supra) we did not stop our inquiry with an interpretive analysis. We recognize that regardless of whether there exists a Federal constitutional provision parallel to a State provision, we must undertake a "noninterpretive” analysis, proceeding from "a judicial perception of sound policy, justice and fundamental fairness” (id., at *379 303).* Under this analysis relevant considerations include whether the right at issue has historically been afforded greater protection in New York than is presently required under the Federal Constitution, whether the right is "of peculiar State or local concern,” or whether the State citizenry has "distinctive attitudes” toward the right (id; see also, People v Class, 67 NY2d 431, 433 [upon a routine stop for a traffic infraction, an officer’s nonconsensual entry into an automobile to determine a vehicle identification number violates the State Constitution, although it does not violate the Federal Constitution]). Finally, to these interpretive and non-interpretive factors we have added the practical considerations of the need for Federal-State uniformity, and the sometimes countervailing necessity of a "bright line” test in certain areas of the law (People v P. J. Video, supra, at 303-304).
Applying these principles, we find no basis for departing from Trombetta as a matter of State constitutional law. In the past, in interpreting the State Due Process Clause we have at times performed an interpretive analysis (e.g., Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 159-160 [noting that, unlike the 14th Amendment of the Federal Constitution, the State due process provision lacks express reference to a State-action requirement]) and a noninterpretive analysis (e.g., Cooper v Morin, 49 NY2d 69, cert denied 446 US. 984 [rejecting the reasoning of Bell v Wolfish, 441 US 520]). As recognized by defendants in the case before us, however, the interpretive factors of textual, structural and historical differences between the due process provisions are not material for present purposes.
Under a noninterpretative analysis, there can be no doubt in New York that the fairness of a criminal proceeding is of particular State concern, and New York historically has provided various protections in this area above the Federal constitutional minimum (see, e.g., People v Hobson, 39 NY2d 479 [right to counsel protections]; People v Isaacson, 44 NY2d 511 [due process limits on police conduct]). The Supreme Court’s analysis and result in Trombetta, however, are consonant with New York State law and interests and, we believe, *380 they are analytically correct and provide a fair and proper rule under our State Constitution.
The Trombetta decision, written for a unanimous Supreme Court, rests upon two propositions: first, that the breathalyzer test is accurate, and second, that a defendant at trial can adequately explore malfunctions caused by faulty calibration, radio wave interference, contamination of the sample by foreign objects, or operator error by examining the machine, reviewing calibration and similar records, and questioning the officer who administered the test.
Although defendants in this case dispute the accuracy of these premises, decisions of this court also amply support the Supreme Court’s conclusions. Recently we reaffirmed our longstanding conclusion that "the scientific reliability of breathalyzers in general is no longer open to question” (People v Mertz, 68 NY2d 136, 148, citing People v Gower, 42 NY2d 117). Moreover, in this State a positive breathalyzer test establishes only a prima facie case and is not per se evidence of guilt, thus allowing defendant to argue, for example, that his blood alcohol content was lower when he was driving than when the test was given (People v Mertz, supra, at 146).
In addition, when a breathalyzer test is sought to be used against a defendant at trial "the People must introduce evidence from which the trier of fact could reasonably conclude * * * that the testing device was in proper working order at the time the test was administered to defendant * * * and that the chemicals used in conducting the test were of the proper kind and mixed in the proper portions” (People v Freeland, 68 NY2d 699, 700). Finally, other avenues of challenge to the accuracy of the breathalyzer test are available (see, People v Thomas, 121 AD2d 73, affd 70 NY2d 859 [foreign object in the defendant’s mouth can result in a false breathalyzer reading]; People v English, 103 AD2d 979 [defendant may not be denied discovery which prevents him from challenging the reliability and accuracy of the machine]). In sum, the analysis of the court in Trombetta, which we find persuasive, finds full support in the decisions of the courts of this State.
Defendants argue, however, that notwithstanding the accuracy of the breathalyzer test or the alternative avenues for disclosing machine malfunction, the strong protection of defendants’ access to information under New York law requires a different result than that reached by the Trombetta court *381 (see, e.g., People v Ranghelle, 69 NY2d 56 [failure to produce Rosario material is not susceptible to harmless error analysis]; People v Kelly, 62 NY2d 516 [People have a duty to preserve discoverable evidence until a request for production is made]; People v White, 40 NY2d 797 [defendant is entitled to pretrial discovery of drugs in the possession of the People to perform his own scientific tests]). These decisions, however, do not provide the basis for a rule, sought by defendants in this case, that would require the police to affirmatively gather evidence for the accused (cf., People v Reedy, 70 NY2d 826 [evidence not in the possession or control of the People need not be turned over to the defendant]). Finally, we note that there is no legal impediment to defendant obtaining this additional evidence for defense purposes; indeed, the Legislature has provided that a defendant has a statutory right to have a personal physician administer an additional chemical test (Vehicle and Traffic Law § 1194 [8]).
Accordingly, we conclude that as a matter of State constitutional law the police are not required to obtain and preserve a second breath sample for later use by the accused, and the orders of the Appellate Term should, therefore, be affirmed.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Orders affirmed.

 Even if parallel to a Federal constitutional provision, a State constitutional provision’s presence in the document alone signifies its special meaning to the People of New York; thus, the failure to perform an independent analysis under the State Constitution would improperly relegate many of its provisions to redundancy (Kaye, Dual Constitutionlism In Practice and Principle, 42 Rec AB City NY 285, 297-299).