OPINION OF THE COURT
Loren N. Brown, J.
This proceeding was commenced by order to show cause to obtain an order reversing the denial by a Hearing Officer of the petitioner’s motion to suppress certain evidence, granting *462 suppression, overturning an order of the New York State Racing and Wagering Board of May 3, 1988, and dismissing the suspension and penalty imposed upon the petitioner by the respondent. The motion is in all respects opposed.
The petitioner is a trainer and driver of harness horses, and as such is licensed by the respondent. On March 2, 1985 a horse named Mohawk Adour, trained by the respondent, raced and lost at Saratoga Raceway in Saratoga Springs, New York. A routine urine sample taken from the horse after the race allegedly showed the presence of the drug phenylpropanolamine. The respondent suspended the petitioner for 60 days for training a horse which raced with that drug in its bloodstream. The petitioner appealed the suspension, and by letter, dated April 1, 1985, immediately requested that a portion of the sample be retested at an independent laboratory in Pennsylvania. No test was immediately forthcoming despite repeated requests. An assistant counsel for the respondent, Robert A. Feuestein, admitted in a letter to the petitioner’s attorney, dated July 9, 1985, that "an inadvertent clerical error” resulted in a delay in shipping the sample to the laboratory. By the time the sample finally was shipped and tested, it had decomposed. The tests conducted by the laboratory could not confirm the presence of phenylpropanolamine because of the decomposition. Thereafter, a hearing addressed to the allegations was held and the suspension was upheld by the Hearing Officer. Based upon the Hearing Officer’s report, the suspension of 60 days was confirmed by the respondent. This proceeding pursuant to CPLR article 78 followed.
In ruling on the issues present, the court starts with that which is self-evident — the petitioner was entitled to defend himself against the respondent’s accusations. The requirements of due process embodied in both State and Federal Constitutions permit no less. (Matter of Lyons v Goldstein, 290 NY 19; Walker v Johnston, 312 US 275.) When the petitioner requested a retest by an independent laboratory, it was clear that his defense strategy would revolve around the accuracy of the test. The delay, occasioned solely by the "clerical error” on the part of the respondent, deprived the petitioner of that defense. For instance, had he been possessed with precognition, he may well have seen to it that the sample was timely delivered for retesting. The respondent made the accusations, and at the same time effectively denied the petitioner a defense to those accusations. The results of the test, the sole basis for the charges, became virtually unassailable.
*463 The respondent relies upon cases in the criminal context which do not require law enforcement agencies to preserve breath samples for retesting by a defendant. (California v Trombetta, 467 US 479; People v Alvarez, 70 NY2d 375.) It is argued that if preserving samples for retesting by the defendant is not required in criminal cases, then a fortiori, preservation in civil cases is not constitutionally required. However, those cases appear to turn, in part, on the recognized reliability of breathalyzer tests, and on the lack of any duty on the part of the People to gather evidence for the defendant. Here, the test performed on the horse’s urine does not appear to be generally accepted as reliable in the courts, and the respondent was not asked to collect evidence for the petitioner. The urine sample already existed for testing.
More to the point than the criminal cases relied upon by the respondent is the recent case of Ferguson v Meehan (141 AD2d 604). The Supreme Court, Appellate Division, Second Department, found that the New York City Transit Authority had denied a Transit Authority police officer, charged in connection with drug use, due process by failing to permit the officer to inspect a urine sample, despite repeated, timely requests, until the sample was destroyed. The court opined: "While due process may not require an administrative agency to preserve evidence on the off chance that the subject of disciplinary charges may wish, at some future date, to examine that evidence, at the very least, upon the petitioner’s request, the appellants should have either promptly notified the laboratory of the petitioner’s desire to have the specimen independently screened or promptly provided the petitioner with the name of the laboratory where the specimen was being held.” (Supra, at 606.)
The test upon which the suspension was based must be suppressed. With the suppression, the suspension and penalty imposed on the petitioner must be reversed and annulled as unsupported.
The court has examined the petitioner’s alternative grounds for relief and finds them to be without merit.