Simons, J.
(concurring). I, too, would affirm because the evidence should have been turned over to defendant. I write separately, however, because I do not agree with the majority’s standard for determining materiality based on the nature of the defendant’s request. I agree with the Supreme Court that exculpatory evidence is either material to guilt or not material; it does not become more so because of the form of the defendant’s request for it. Because I can find no reason to construe our State Constitution’s Due Process Clause in a way different from the Due Process Clauses in the Federal Constitution, I would apply the Federal standard and hold that *79 Brady evidence is material only if there is a reasonable probability that the prosecution’s failure to deliver it affects the outcome of the trial.
I
In Brady v Maryland (373 US 83), the Supreme Court held that the prosecution must disclose to defendant evidence in its possession that is (1) favorable to the defense and (2) material either to guilt or punishment. The failure to do so violates the constitutional guarantee of due process. The question presented by this appeal is what evidence is material. The Brady court offered no guidance on the question but the subject was subsequently discussed in United States v Agurs (427 US 97) and resolved as a matter of Federal constitutional law in United States v Bagley (473 US 667).
In Agurs the defense did not request Brady material. Nevertheless, the court equated no request with a general request and held that under either circumstance evidence should not be considered material unless it was so obviously supportive of a claim of innocence that elementary fairness suggests it should have been disclosed (United States v Agurs, supra, at 104). The court had no such concern that the outcome of the Agurs trial was affected by the failure to turn over Brady material and affirmed defendant’s conviction. Having decided the case before it, the court went on to suggest that in cases in which the defendant has made a specific request for exculpatory material, the standard of materiality could be more favorable to defendant. As commentators have noted, the decision is not without its ambiguities (see generally, discussion of Agurs in 2 LaFave & Israel, Criminal Procedure § 19.5, at 537-541).[1]
The Supreme Court resolved these ambiguities in United States v Bagley. Bagley involved a specific request for Brady material but the court formulated a standard of materiality applicable to all nondisclosure cases. It held that evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense the result of the proceeding would have been different. The Bagley majority re *80 jected the suggestion in Agurs that a defendant who had made a specific request was entitled to greater consideration, and the prosecutor less, in assessing the materiality of the requested evidence. Bagley’s rule of reasonable probability is unquestionably the Federal rule for testing materiality in all Brady cases (see, Pennsylvania v Ritchie, 480 US 39, 57 [Powell, J.]; People v Chin, 67 NY2d 22, 33; 2 LaFave & Israel, Criminal Procedure § 19.5, at 153 [Supp 1989]).
II
The issue then is whether New York should apply a standard more favorable to defendants as a matter of State law. When presented with such a question, the court exercises its independent judgment to determine the scope and effect of the guarantees contained in the State Constitution; it is not bound by a decision of the Supreme Court limiting the scope of similar guarantees in the Federal Constitution (see, People v Barber, 289 NY 378, 384). Uniformity and consistency, though certainly not controlling, are nevertheless important factors, and the court should not disregard the Supreme Court’s decisions merely because it disagrees with them or dislikes the result reached. We explained the appropriate analysis fully in People v P. J. Video (68 NY2d 296, 301-303; see also, People v Kohl, 72 NY2d 191, 197; People v Alvarez, 70 NY2d 375, 378-379; see generally, Bonventre, Beyond the Reemergence — "Inverse Incorporation” and other Prospects for State Constitutional Law, 53 Albany L Rev 403, 407-412). Briefly, if the language of the Federal provision and its State counterpart differ, then the State court, after examining the State provision and its textual and historical differences, may conclude that it should be construed otherwise than the Federal provision. Even if the language of the two provisions is the same, however, the court may conclude that a different construction is in order because of noninterpretative considerations. Such considerations include whether the right has historically been accorded greater protection in New York than is presently required under the Federal Constitution, whether it is "of peculiar State or local concern” and whether the State citizens have distinctive attitudes toward the right.
In People v Alvarez (70 NY2d 375, supra), we noted that though the language of New York’s Due Process Clause differs from that found in the Federal Constitution, the differences are not material and do not suggest inconsistent analysis; if *81 the clauses are to be read differently, the construction must rest on noninterpretative factors. Analysis of those factors establishes that the Supreme Court’s decision in Bagley is analytically sound, it is consonant with State law and interests and should be the rule in New York as a matter of State constitutional law.
A.
I turn first to the analytical basis for the Bagley rule.
Due process of law requires, at a minimum, that an accused be prosecuted in proceedings that are fair. The Brady rule rests on the premise that proceedings cannot be fair if evidence is withheld which casts doubt on the guilt of the defendant. The prosecutor serves a dual role as an advocate and public officer, charged not only with the responsibility to obtain convictions but also to see that justice is done (see, Brady v Maryland, supra, at 87-88; United States v Agurs, supra, at 110-111; see also, People v Pelchat, 62 NY2d 97, 105-106). It is the prosecutor’s duty, therefore, to deliver exculpatory evidence to the defendant before trial, whether requested or not. If he or she fails to do so, the judgment of conviction must be annulled, not to punish the prosecutor but to insure defendant’s conviction has resulted from a fair trial. The omission constitutes reversible error, however, only if the evidence withheld is material.
In defining materiality, the Supreme Court has recognized that in the case of a general request or no request an overly broad construction would unduly burden prosecutors, forcing them to predict the documents in their sometimes voluminous files which might be used favorably by defendants in support of an unknown theory of defense. Inasmuch as omission would result in reversible error, prosecutors could be required to open their entire file to the defense. Whether an open file procedure is desirable or not, it is not the method under which the criminal justice system presently works. We rely on adversarial proceedings to discover truth and determine guilt or innocence.
It was with these considerations in mind that an accused’s specific request for Brady material acquired significance. By identifying the material sought, the defendant provided notice to the prosecution and eliminated its need to review extensive files and speculate about the usefulness of the documents to defendant. It was this notice aspect of specific requests which *82 prompted the statement in Agurs, recited in some of our decisions (see, People v Brown, 67 NY2d 555, 559; People v Cwikla, 46 NY2d 434, 441-442), that when the "prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable” (United States v Agurs, supra, at 106). The majority, emphasizing this statement, maintain that the standard of materiality should be more favorable to the accused because of the fault of the prosecutor in failing to turn over identified material and the prejudice from assumptions by the defense as a result of the omission that no such evidence exists. The quotation does no more than express the obvious, however. A prosecutor charged with the duty of delivering exculpatory evidence to an accused should not gamble on materiality when a specific item is requested, thereby risking subsequent reversal, but hand it over, or, if in doubt, ask the court to rule on materiality before refusing to do so (see, United States v Agurs, supra, at 106-107; Note, Specific Requests and the Prosecutorial Duty To Disclose Evidence: The Impact of United States v Bagley, 1986 Duke LG 892, 909). The good or bad faith of the prosecutor in failing to deliver exculpatory evidence is irrelevant: error results because of "the character of the evidence, not the character of the prosecutor” (United States v Agurs, supra, at 110).
Moreover, although the failure to respond to a specific request may disadvantage a defendant, it does not necessarily do so and if prejudice results from the prosecutor’s withholding the defendant should be able to identify it readily. The rule the majority urges rests on a presumption that the denial of due process is more likely to occur than not when a specific request is unanswered. I find no warrant for such a presumption and no harm in requiring the defendant to prove the fact if it is so. Defendant is entitled on review to a consideration that a specific request was made of the prosecutor and, if misled or prejudiced by a failure to comply with the request, then the court must consider the effect that failure had on the outcome of the trial. But the key is the effect the omission had on the trial — not the form the request took.
This case is an illustration of that obvious truth. The charge rested upon arson by explosion and defendant specifically requested the reports of the police experts in an attempt to prove that no explosion occurred. One, expressing doubt on the question, was not turned over to defendant. Manifestly, the missing report was exculpatory and material to the issue *83 of guilt but it did not become more so because a specific request was made for it. Nor would it have become less so if defendant had made a general request. Whether the defendant has been prejudiced by the failure to respond to a specific request is an entirely separate issue to be explored by the court, but absent some showing that prejudice resulted which affected the outcome of the trial, the defendant is not entitled to an advantage on review because a specific request was made.[2]
B.
In the past when we have departed from the Supreme Court’s decisions, we generally have done so because (1) we chose to adhere to our own established law or because the Supreme Court has retreated from previously announced rules (e.g., People v P. J. Video, 68 NY2d 296, supra; People v Johnson, 66 NY2d 398; People v Bigelow, 66 NY2d 417), (2) to establish a more protective State right by constitutionalizing a prior fully developed common-law right (e.g., Rivers v Katz, 67 NY2d 485) or (3) because we have found a separate State rule justified by concerns peculiar to New York State residents (see, Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57, 65).
Of our recent due process cases People v Alvarez (70 NY2d 375, supra) most warrants discussion because it concerned exculpatory evidence. In Alvarez defendant contended that the police were required to preserve potentially exculpatory evidence, breath samples, on behalf of a defendant accused of drunk driving offenses. We were asked to announce a due process standard under the State Constitution more protective of defendant than that applied by the Supreme Court when it considered the same Brady argument in California v Trombetta (467 US 479). After considering the language of our Due Process Clause and any noninterpretative factors which might warrant a result different from that approved by the Supreme Court in the Trombetta case, we found no reason for departing *84 from the Federal standard to afford New York residents greater protection in Brady cases under the State Constitution. Similarly, I find no basis in the present case to define materiality in a way to extend greater due process protection to New York State defendants than that afforded by the Federal Constitution.
Although never explicitly stated, the thrust of the majority’s argument here is that the analytical tests of P. J. Video and Alvarez are satisfied and a different New York rule warranted notwithstanding the similarity of the New York and Federal Due Process Clauses, because New York has established a body of law on the subject by following the Agurs "two-tier” approach (see, majority opn, at 73) and that our law has now been undermined because the Supreme Court has "jettisoned” the fairness considerations outlined in Agurs (see, majority opn, at 75) and adopted the new standard of materiality in Bagley. Accordingly, it contends the Agurs reasonable possibility standard should remain the appropriate rule in New York (majority opn, at 76). Indeed, the majority, noting that Brady v Maryland rests on precedents similar to our decisions in People v Savvides (1 NY2d 554) and People v Creasy (236 NY 205) suggests that New York rules on exculpatory evidence developed along independent lines parallel to the development of Brady principles in Supreme Court.
The analysis is similar to that we found persuasive in People v Johnson (supra) and People v Bigelow (supra). In those cases we were called upon to elect between applying the Aguillar-Spinelli rules formulated by the Supreme Court, rules which we had followed for many years to test hearsay evidence for probable cause purposes, and the newly stated Gates "totality of the circumstances” rule (Illinois v Gates, 462 US 213). We concluded that we would adhere to our prior decisions as a matter of State constitutional law, rather than change our rules and destabilize the law merely because the Supreme Court had revised its position on the subject.
Similar reasoning is not persuasive in this case for several reasons.
First, until Bagley had been decided the Supreme Court had never ruled on whether the failure to deliver exculpatory matter specifically requested was material in the sense that there was a reasonable possibility that had the evidence been disclosed the result of the proceeding would have been different. A specific request was made in Brady but materiality was *85 not an issue; in Agurs there was no request. Thus, the suggestion that the Supreme Court had adopted a "two-tiered approach” to resolving the question in Agurs in 1975 and then "jettisoned” it in Bagley in 1984 is simply not accurate.
Second, New York has no constitutional rules on Brady material independent of Federal precedents. Although People v Brown (67 NY2d 555, supra) and People v Cwikla (46 NY2d 434, supra) quoted language from Agurs (see, ante, at 82), neither case required us to decide the appropriate standard for assessing materiality based upon defendant’s request for specific exculpatory evidence. Nor do any of the other decisions cited by the majority adopt the Agurs rule. Specifically, in People v Smith (63 NY2d 41), defendant made no request, let alone a specific request, for Brady material and we held that the courts below properly denied the claim because the requested evidence was not material. Nor do the cited Appellate Division decisions support the majority’s claim. In People v Velez (118 AD2d 116), there was no request for exculpatory material and no standard for materiality was stated. In People v Pugh (107 AD2d 521), defendant made a general request and no standard of materiality was stated. In People v Kitt (86 AD2d 465), the dispositive question was whether the evidence was exculpatory or not. In People v Ramos (146 Misc 2d 168,170), the court, in refusing to follow Bagley, stated that when the prosecutor failed to disclose exculpatory evidence specifically requested reversal was required per se; "[m]ateriality of the nondisclosed evidence is not a factor.” That statement does not represent past or present law in New York State or, it would seem likely, anywhere else. No New York case, that I am aware of, has ruled that the failure to disclose specifically requested material is subject to a reasonable possibility standard other than the case before us. Certainly, not enough decisions do so to support the majority’s conclusion that New York has developed a body of law on the subject which has now been undermined by the Supreme Court decision in Bagley.
Finally, I cannot agree that People v Savvides (1 NY2d 554) and People v Creasy (236 NY 205) indicate that New York has developed its own independent body of law on exculpatory evidence consistent with the Agurs dicta. Those cases do not address the requirement that the People deliver exculpatory material to the defense pretrial, they do not deal with Brady evidence at all. Rather, they address the denial of due process because the prosecutor has improperly concealed the fact that *86 trial evidence is false. That the Supreme Court relied on similar decisions in formulating the rule in Brady v Maryland is an interesting but irrelevant coincidence. Nor does the enforcement of Brady in New York rest to any degree on People v Ranghelle (69 NY2d 56) or People v Perez (65 NY2d 154). Those Rosario decisions are governed by their own rules and rest on separate precedential and statutory authority.
Thus, applying the analysis set forth in P. J. Video (supra), People v Alvarez (supra) and similar cases, there is no analytical basis upon which to interpret New York’s Due Process Clause differently from the Due Process Clauses of the Federal Constitution as interpreted by the United States Supreme Court. The majority merely finds arguments rejected by the court in United States v Bagley (supra) more persuasive than those adopted by the court. That is within its power but a disagreement with the highest court in the land based solely on a preference for another rule when the provisions of the two Constitutions read the same raises doubt about our processes and creates instability and uncertainty in our law.
Accordingly, I would adopt the Bagley rule of materiality finding it strikes a fair and proper balance between prosecution and defense and offers the advantages of uniformity and consistency with the Federal standards in criminal proceedings and that any other rule under the State Constitution is not warranted in view of the similarity of the State and Federal Due Process Clauses.
I, therefore, concur.
Judges Alexander, Titone and Hancock, Jr., concur with Judge Kaye; Judge Simons concurs in a separate opinion in which Chief Judge Wachtler and Judge Bellacosa concur.
Order affirmed.

. After an extensive discussion, the closest the court came to stating a rule for specific requests was: "The test of materiality in a case like Brady in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made.” (United States v Agurs, 427 US 97,106.)

. In urging a higher standard in specific request cases, the majority points out that the Supreme Court decision in Bagley rests in part on the standard adopted for assessing ineffective assistance of counsel claims in Strickland v Washington (466 US 668) and that we have not adopted the Strickland standard (majority opn, at 74, n 3). We have not rejected the Strickland standard either, merely finding our own prior decisions established sufficient standards when questions of ineffective assistance of counsel were presented.