■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN R. MERRICK, Appellant.—Yesawich Jr., J. Appeal from a judgment of the County Court of Otsego County (Mogavero, Jr., J.), rendered October 7, 1991, upon a verdict convicting defendant of the crimes of driving while intoxicated (two counts) and aggravated unlicensed operation of a motor vehicle in the first degree.

At approximately 12:25 A.M. on May 30, 1989, State Troopers David Segit and Kenneth Sosnowski arrived at Roberta Hymas' residence after being called to assist in resolving a dispute between Hymas and defendant. Upon arrival, the Troopers observed that defendant slurred his speech, had bloodshot, watery eyes, was swaying and smelled of alcohol. On Hymas' complaint, defendant was arrested for harassment and trespass. While en route to the State Police station,

without inquiry from the Troopers, defendant stated that he had been drinking at a bowling alley, had gotten into a fight and had then driven to Hymas' house. He also said that he had not ingested any alcohol since arriving at Hymas' residence, and that he should not have been driving as he did not have a valid license; he requested a breathalyzer test to prove that he was not intoxicated.

Before the breathalyzer test was administered, defendant was arrested for driving while intoxicated. The test, performed at approximately 1:30 A.M., revealed a .15% blood alcohol content. Defendant spent eight days in custody prior to being arraigned and released without bail. An indictment charging defendant with two counts of driving while intoxicated as a felony and one count of aggravated unlicensed operation of a motor vehicle in the first degree was filed September 12, 1990. The People filed their statement of readiness on October 1, 1990. Tried and convicted on all counts, defendant appeals.

We reject defendant's contention that the statements he made while he was in the police car should have been suppressed. The evidence fully supports County Court's determination that those statements were freely volunteered and were not made in response to any questioning or coercion. The mere fact that he was in custody, without more, does not render them inadmissible (see, People v Smith, 173 AD2d 959, 959-960). Furthermore, for a statement to be suppressed because the defendant was intoxicated when it was made, the degree of inebriation must have risen to the level of mania (People v Schompert, 19 NY2d 300, 305, cert denied 389 US 874). There is no evidence that defendant's intoxication reached that stage.

Nor is there merit to the argument that the judgment must be overturned because the evidence does not exclude to a moral certainty the possibility that defendant did not drive Hymas' car home on the night in question. This argument presupposes that the verdict is based solely on circumstantial evidence. It is clear, however, that the People's case also rested on defendant's spontaneous statements that he drove the car and that he had nothing to drink after arriving at Hymas' house, which are direct evidence (see, People v Abel, 166 AD2d 841, 842, lv denied 76 NY2d 983). Both direct and circumstantial evidence being present, the moral certainty standard is inapplicable (see, People v Barnes, 50 NY2d 375, 380). And when viewed in the light most favorable to the People, the circumstantial evidence, taken together with defendant's incriminating statement that he should not have

been driving because he lacked a valid license, justifies the finding that defendant drove Hymas' car to her residence, and that he was legally intoxicated and did not possess a valid driver's license when he did so.

As for defendant's statutory and constitutional speedy trial challenges, only the former merits comment. The pertinent facts bearing on the statutory speedy trial claim are that although the People's statement of readiness was filed less than one month after the indictment was handed up in September 1990, it appears that when defendant was originally arrested he was given an appearance ticket charging him with operating a motor vehicle while under the influence of alcohol or drugs in violation of Vehicle and Traffic Law § 1192. While the ticket itself does not appear in the record, the "Supplemental Deposition and DWI Bill of Particulars", dated May 30, 1989, refers to such a ticket, which we presume was issued. When such an appearance ticket is served, the criminal action is deemed to commence when defendant first appears in court in response to such ticket (CPL 30.30 [5] [b]). Assuming, without deciding, that defendant's arraignment on June 7, 1989 was generated by this ticket (the record is unclear), and therefore commenced the action, we nonetheless find defendant's speedy trial rights to have been waived.

The People were initially prepared to present the case to a Grand Jury in August 1989, approximately two months after defendant's arrest. The ensuing postponement was requested by defense counsel to allow defendant time to comply with the terms of a plea bargain offered by the prosecution, an important condition of which was defendant's enrollment in and completion of a clinical course for the treatment of alcoholism. After defendant attempted but failed to meet this condition, the People, though prepared to put the matter before the Grand Jury on at least two other occasions, in April and August 1990, did not do so at defense counsel's request; the matter was withheld to enable defendant to comply with the treatment terms of the People's plea-bargain offer. The People should not be held to answer for the time during which they were merely cooperating with defendant's attempts to seek rehabilitation treatment. When these time periods are excluded, the remaining time chargeable to the People is well within the six-month limit.

It is also urged by defendant that County Court erred in denying his motion to suppress the breathalyzer results without a hearing. He relies on *People v Hochheimer* (119 Misc 2d 344) for the proposition that a pretrial hearing should be held

to determine whether, at the time of his test, the breathalyzer was adversely affected by electromagnetic interference. When *Hochheimer* was decided, the possibility of such a malfunction was a new discovery; the likelihood of such an occurrence and the extent of its impact were unknown. In 1986, however, after ample time had passed for the effects to be studied and documented, the general reliability of breathalyzer results was reaffirmed *(see, People v Mertz,* 68 NY2d 136, 148; *see also, People v Garneau,* 120 AD2d 112, 114, *lv denied* 69 NY2d 880), subject to the usual foundational showing that the machine was generally in good working order at the time of the test. Then, in 1987, in explaining its holding that a second breath sample need not be taken at the time of the test and preserved for the use of the defense, the Court of Appeals, adopting the analysis of the United States Supreme Court in *California v Trombetta* (467 US 479), stated that "a defendant *at trial* can adequately explore malfunctions caused by faulty calibration, *radio wave interference,* contamination * * * or operator error" by examining the machine, reviewing calibration records and cross-examining the officer who performed the test *(People v Alvarez,* 70 NY2d 375, 380 [emphasis supplied]). Given this explicit statement that such issues may properly be decided at trial by the finder of fact, County Court's holding cannot be said to be erroneous.

Defendant's other arguments have been considered and found to be meritless. Mikoll, J. P., Mercure, Crew III and Casey, JJ., concur. Ordered that the judgment is affirmed.