THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN JOSE ENRIQUE, Appellant.

First Department, January 31, 1991

### APPEARANCES OF COUNSEL

*Alan Gadlin* of counsel *(Norman Barclay* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Barry A. Schwartz* of counsel *(Schwartz & DiBlasi,* attorneys), for appellant.

### OPINION OF THE COURT

SULLIVAN, J.

At issue is whether a defendant's constitutional right to the assistance of counsel was violated by a trial court's order banning consultation between him and his attorney during a luncheon recess called during the course of defendant's cross-examination.

The evidence at trial shows that at approximately 10:55 A.M. on February 26, 1986, Police Officer Winfred Maxwell arrived at 155 Audubon Avenue in Manhattan with several other officers, including James Doyle, in response to a request earlier that morning by Sharif Esmat, the manager of the building, to evict squatters, whom he said had guns. Before entering the building, Maxwell again met with Esmat, who introduced him to Jose Vilches, a handyman in the building.

Vilches then led Maxwell, Doyle and the other officers to a basement apartment. As they approached the apartment door, the officers drew their guns, and one of them announced, "police". Within a matter of seconds, the door was opened by a man, who, after being ordered not to move, allowed the officers into the apartment. As Officer Doyle entered, he saw another man, later identified as Habir Pena, standing approximately 10 to 13 feet away, holding a gun. When Pena stepped out of sight momentarily, the officers moved towards the back of the apartment and observed defendant, standing about a foot away from Pena. An "instant" after being first observed, defendant threw an object, described as a six-inch long, clear plastic bag with a white "brick" inside it, across the room and onto a chair 10 feet away in the adjoining room.

As the other officers placed defendant, Pena and the man who opened the door, Victor Camacho, against the wall, Maxwell recovered the plastic bag, which was found to contain 4⅜ ounces of cocaine. The gun which Officer Doyle had seen in Pena's hand—a loaded .357 Magnum—was found in a folded-up cot, alongside of which Pena had been standing. Defendant, Camacho, Pena and another occupant of the apartment, Bartolo Della Cruz, who had emerged from a back room where, apparently, he had been sleeping, were all arrested and charged with possessing cocaine. Defendant told the officers that he lived in another apartment in the building.

Defendant testified that he went to the apartment in question to assist Camacho, an "acquaintance", in finding another apartment. Ten minutes after his arrival, as he was standing at the door about to leave, the police entered and told him, "Don't move. Put your hands up." Defendant did not see anyone holding a gun; nor did he at any time possess the bag with the cocaine. Vilches, who testified in defendant's behalf, confirmed that defendant, whom he had never seen before, was exiting the apartment at the time the police entered and that he was not holding anything in his hands.

During the course of defendant's cross-examination, at approximately 12:50 P.M., the court declared a luncheon recess, instructing the jurors to return at 2:15 P.M. After the jurors had left, defense counsel asked, "[I]s the Court telling me I can't speak to [defendant] now, or can I speak to him?" The court responded by advising counsel that it was within its discretion to prohibit consultation and that if he wished "to tell [the court] what you would like to say or how long you

would like to say it," it "might entertain that". Counsel answered that he would "rather not" reveal that information, whereupon the court ruled that it would not allow him to speak to defendant.

Later, after the luncheon recess, in response to the court's request for any further comments on its ruling, counsel argued, "[W]e were ready to break for lunch, and I would have had the benefit of some time between ten to one and 2:15 to speak to [defendant]." Counsel then recalled that the court had asked "what I wanted to speak to him about." Although protesting that he "still [didn't] want to get into it," counsel stated that one topic was "strictly a procedural item on how to conduct himself as a witness." While he had discussed the matter before, counsel stated, he wanted to "reinforce" his instructions "because of the obvious language difficulties." Counsel then stated that the other matter he wished to discuss was "substantive", involving "something that [defendant] did testify to earlier but nothing that I am anticipating [will] be raised in the future." Acknowledging that he was being "a little cryptic", counsel stated, "[t]hat is the best that I am willing to do at this point", and took exception to the court's ruling. The court justified its ruling with the explanation that "counsel cannot impart to his client anything with regard to [an] anticipated line of questioning. I don't think it is appropriate." The jurors returned to the courtroom at 2:54 P.M. and defendant's cross-examination was continued.

The jury found defendant guilty of criminal possession of a controlled substance in the first degree. Among the issues he raises on appeal is the claim that he was deprived of the effective assistance of counsel as a result of the court's injunction to counsel not to speak to him during the luncheon recess called in the midst of his cross-examination.

The Sixth Amendment of the US Constitution provides that in all criminal prosecutions the accused shall enjoy the right "to have the Assistance of Counsel for his defence." The Supreme Court, in interpreting that right, has noted that a defendant in a criminal proceeding "requires the guiding hand of counsel at every step in the proceedings against him." (*Powell v Alabama,* 287 US 45, 69; *see also, Argersinger v Hamlin,* 407 US 25, 31-37; *Gideon v Wainwright,* 372 US 335, 343-345.) That the opportunity for unimpeded discourse between lawyer and client is an essential element of the right to counsel is too obvious to require extended discussion. Yet, as courts have recognized, the right to counsel with one's attor-

ney is not absolute; it may be reasonably restricted to enable a court, in its discretion, to control the conduct of a trial. *(See, People v Hilliard,* 73 NY2d 584, 586; *see also, People v Narayan,* 58 NY2d 904, 906.)

The Supreme Court, as recently as 1989, and in an earlier 1976 case, has defined the limit of the scope of that discretion. In *Geders v United States* (425 US 80 [1976]), the court reversed a conviction based on a trial court's ban of all consultation between the defendant and his lawyer during a 17-hour overnight recess between the defendant's direct and cross-examination, holding that such an order "impinged upon [the defendant's] right to the assistance of counsel guaranteed by the Sixth Amendment." *(Supra,* at 91.) Recognizing a trial court's concern with the possibility of improper influence on the defendant-witness's testimony, the court suggested a number of ways, "short of putting a barrier between client and counsel for so long a period as 17 hours," to deal with the problem *(supra,* at 89). Expressly left unanswered, however, was the question of whether a ban on consultation during a "brief routine recess" in the course of a defendant's testimony would be permitted. *(Supra,* at 89, n 2, 91.)

That question was reached in *Perry v Leeke* (488 US 272 [1989]), which held that a ban on consulting with anyone, including his attorney, during a 15-minute afternoon recess, called at the conclusion of a defendant's direct examination, did not violate his Sixth Amendment right to the assistance of counsel. In upholding the trial court's exercise of discretion in imposing the ban, the court justified its holding not out of any concern that defense counsel would engage in unethical "coaching" *(supra,* at 281-282), but, rather, in recognition of the danger that even an ethical consultation would assist a defendant in regaining "a poise and sense of strategy" *(supra,* at 282) that an uncounselled defendant would not. Such consultation, "even if we assume no deceit on the part of the witness", it held, would interfere with effective cross-examination, which depends on the ability "to punch holes in a witness' testimony at just the right time, in just the right way." *(Supra,* at 282.) Thus, cross-examination of an uncounselled witness was "more likely to lead to the discovery of truth" than one in which a witness is permitted, in the course thereof or between direct and cross-examination, to consult with his attorney. *(Supra,* at 282.)

In holding that a defendant witness "has no constitutional right to consult with his lawyer while he is testifying", the

court noted that the rationale for the rule is one applicable to all witnesses. (488 US, at 281.) "It is a common practice", the court observed, "to instruct a witness not to discuss his or her testimony with third parties until the trial is completed." *(Supra,* at 281.) When a defendant chooses to assume the role of a witness, he " 'places himself at the very heart of the trial process' " *(supra,* at 283, quoting *United States v DiLapi,* 651 F2d 140, 151 [Mishler, J., concurring], *cert denied* 455 US 938) and subjects himself to the rules, generally applicable to other witnesses, that serve the truth-seeking function of the trial. (488 US, at 282.) Distinguishing between a long recess where the defendant's right "to unrestricted access to his lawyer for advice on a variety of trial-related matters" is controlling, notwithstanding that any discussions between them "will inevitably include some consideration of the defendant's ongoing testimony", and a short recess where "it is appropriate to presume that nothing but the testimony will be discussed", the court held that in the latter situation "the testifying defendant does not have a constitutional right to advice." *(Supra,* at 284.)

Defendant, citing *Geders (supra),* argues that, *Perry (supra)* notwithstanding, the Supreme Court has sanctioned a ban on consultation with counsel only in instances where such consultation would "interfere with the orderly and expeditious progress of the trial" (425 US, at 92 [Marshall, J., concurring]). *Geders* did not, as defendant would have it, so narrowly limit the availability of a ban on consultation. Indeed, he implicitly concedes as much by citing, not the court's opinion in *Geders,* but the concurrence as authority for the interpretation he advances. As a matter of fact, the court in *Geders* expressly noted that it was limiting its holding to prohibiting overnight bans on attorney consultation "about anything" and leaving open the question of limitations imposed in other circumstances (425 US, at 91); in *Perry,* it was equally careful to note that it was resolving an issue that had been expressly left open in *Geders.* (488 US, at 280.)

In providing a rationale for not following *Perry (supra)* in the circumstances presented here, defendant urges the very reasons that supported the court's holding there, namely, so that the defendant and his lawyer can discuss potentially inconsistent testimony and the lawyer can assist the defendant, who may be "intellectually or emotionally ill equipped" in confronting "surprise information" or a "withering" cross-examination. In that regard, he argues that as a constitutional

guarantee the right to counsel is qualitatively indistinguishable from the right to confront witnesses, which, as *Perry* recognized, immunizes the defendant witness in a criminal case from physical sequestration, while nondefendant witnesses may be excluded from the courtroom to prevent them from hearing other witnesses' testimony. (488 US, at 281-282.) It is indeed ironic that defendant casts his argument in such terms, since he would surely argue that he had been denied his right of confrontation were his cross-examination of a prosecution witness punctuated with restorative consultation between the witness and prosecutor. As is clear from a reading of *Perry,* the court based its decision on a principle of basic fairness, i.e., once a defendant exercises his right to testify, he should generally be subject to the same truth-seeking rules as are applied to other witnesses.

Faced with the obvious inequity of asserting a right unavailable to other witnesses, defendant is compelled to focus his attack on the value of rules enhancing the efficacy of cross-examination. Thus, in contradistinction to *Perry (supra),* he argues that, "assuming no deceit on the part of the witness," effective cross-examination "will obscure the truth—not enhance it, because the flustered truth teller is more vulnerable to cross-examination than is the calm truth teller." This novel and purely subjective view, at odds with the generally accepted notion that cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth" (5 Wigmore, Evidence § 1367, at 32 [Chadbourn rev 1974]; *accord, Pointer v Texas,* 380 US 400, 404; *People v Chin,* 67 NY2d 22, 27-28), is hardly justification for allowing a defendant to blunt the potential for effective cross-examination by consultation with his attorney while he is testifying.

In the instant case, it is significant that the trial court imposed an absolute ban on consultation only after affording counsel the opportunity to identify the subjects he wished to discuss with his client. Moreover, the court indicated that it had imposed the ban only because it would be inappropriate for counsel to discuss defendant's impending cross-examination. In so doing, the court made it clear that, based on counsel's response, it was prepared to change its ruling. Thus, counsel would have had to understand that if he identified a topic other than defendant's testimony the ban would have been, to that extent, modified. In *Perry,* the court expressly sanctioned employment of such a compromise. (488 US, at 284, n 8.)

In fact, though, counsel's response amply demonstrated that the court's concerns were justified. Counsel first stated that he wanted to discuss the "procedural" matter of how defendant should "conduct himself as a witness," a matter squarely within that area of consultation that trial courts may ban during a limited recess, i.e., allowing a defendant witness the opportunity "to regroup and regain a poise and sense of strategy that the unaided witness would not possess" *(Perry v Leeke, supra,* 488 US, at 282). Counsel then conceded that he wished to speak to defendant about "something that [defendant] did testify to earlier," i.e., the very substance of defendant's testimony. Although he "anticipat[ed]" that the subject would not be raised again, it seems fairly obvious that counsel had no such assurance. If he had, there would hardly have been any need to discuss the matter further with defendant. Thus, the colloquy between court and counsel merely served to confirm that counsel wished only to discuss defendant's testimony with him, a matter as to which defendant had no right to confer while he was testifying. The court's ruling, therefore, had a firmer basis than the mere presumption, which *Perry* found to be sufficient, that a discussion of defendant's testimony would take place during the afternoon recess.

The dissent, citing *People v Narayan* (58 NY2d 904, 906, *supra),* argues that the right to counsel may not be restricted "unless the court expressly tailors the limitation to prohibit only discussion relating to the point upon which the defendant was being examined when the recess was announced". *Narayan* did not so hold. The Court of Appeals, adopting language from the concurring opinion in its earlier review of the case, stated, " 'it is not error for the Trial Judge in such a situation to make the ruling *here made* preventing conference until questioning on the issue has been concluded' " *(supra,* at 906, citing *People v Narayan,* 54 NY2d 106, 117 [Meyer, J., concurring] [emphasis added]). We find no warrant to extend that narrow ruling into the broad principle that any restriction on the right to confer must be limited to the point on which the defendant was being examined at the time the recess was called.

■ While defendant now argues that the court's suggestion that counsel state why he wanted to talk to defendant violated the attorney-client privilege, no such concern was voiced at the time. Counsel merely noted that he was "uncomfortable" about revealing what he wanted to discuss, which is hardly sufficient to preserve defendant's present complaint. *(See,*

*People v De Jesus,* 69 NY2d 855, 857.) In any event, the claim is without merit. The privilege, which protects against disclosure of a "confidential communication made between the attorney * * * and the client in the course of professional employment" (CPLR 4503 [a]), is intended to guarantee full and free disclosure, without fear by the client that his confidences will be subsequently revealed to his detriment or embarrassment. *(Matter of Priest v Hennessy,* 51 NY2d 62, 67-68.) Inasmuch, however, as the privilege is an "obstacle" to the truth-finding process, its invocation should be "cautiously observed" to assure that it is not misused. *(Supra,* at 68.) In the instant matter, counsel was never asked to disclose any particular communication; he was merely asked to indicate what he wished to discuss with defendant. Absent some explanation as to how the court's suggestion intruded on the attorney-client relationship, we fail to discern how the attorney-client privilege was implicated, much less violated, either explicitly or in spirit.

██ Nor do we see any reason why New York courts, in interpreting the State Constitution (art I, § 6), should reject the Federal constitutional standard set forth in *Perry (supra).* Defendant urges adoption of a State rule that "unless trial counsel is seeking to interfere with the orderly processes of the trial[,] * * * he is entitled, within the bounds of professional responsibility and ethics, to communicate with his client on any subject, at any time during the course of trial irrespective of the fact that an opportunity arises during the course of his testimony." Defendant, however, fails to offer any convincing reason for establishing a State constitutional rule different from the Federal one; he neither suggests any "interpretative" basis, such as significant distinctions in the text, structure or historical background between the two documents, for construing the Federal and State Constitution provisions differently *(see, People v Alvarez,* 70 NY2d 375, 378, citing *People v P. J. Video,* 68 NY2d 296, 302) nor, in arguing that the State provision should "be given a unique reading," advances any significant "noninterpretive" consideration, such as the "distinctive attitudes" of New York residents toward the right at issue *(People v Alvarez, supra,* at 378-379).

In this regard, it should be noted that none of the New York cases that have considered the issue of barring consultation between a defendant and his lawyer during the defendant's testimony have even hinted that the State rule might differ from the Federal. In *People v Narayan* (54 NY2d 106,

112, *supra),* for example, the court cited *Geders (supra),* not any State authority, for the proposition that a ban on consultation could violate a defendant's constitutional right to confer with his attorney. Insofar as defendant seems to suggest that *People v Phillips* (77 AD2d 927, 928) established a special State rule, it should be noted that *Phillips* cited two Federal cases and the court's initial opinion in *Narayan* (76 AD2d 604). As is clear from a reading of *Phillips,* it made no claim of establishing a new and independent State standard.

The luncheon recess declared herein by the trial court is the type of limited interruption during a defendant's testimony to which *Perry (supra),* and not *Geders (supra),* applies. In *Geders,* the court referred to the trial court's consultation ban in *United States v Leighton* (386 F2d 822, 823, *cert denied* 390 US 1025)—during a luncheon recess—as the type of prohibition on consultation during "a brief routine recess" that was not before the court. (425 US, at 89, n 2.) Since the court had the authority to prohibit consultation between defendant and counsel during a luncheon recess called in the course of defendant's cross-examination and its ban was imposed only after counsel, who wished to discuss only defendant's testimony with him, was encouraged to set forth any reason why it should not be imposed, its directive was an appropriate exercise of discretion, which fully respected defendant's right to the assistance of counsel. This is not to say that a trial court is required to prohibit consultation; rather, as *Perry* was careful to note, that is a matter for the trial court's discretion. (488 US, at 284.) If defense counsel gives any indication that consultation is necessary because of some unexpected development or for other valid reasons, it might well be an abuse of discretion to impose a ban during a brief recess.

We have considered defendant's other contentions and find that they are without merit.

Accordingly, the judgment of the Supreme Court, New York County (Edward McLaughlin, J.), rendered June 24, 1987, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the first degree and sentencing him to an indeterminate term of imprisonment of from 15 years to life, should be affirmed.

MILONAS, J. (dissenting). The judgment being appealed herein should be reversed and the matter remanded for a new trial. In my opinion, it was error for the trial court to prohibit

defendant, Juan Jose Enrique, from conferring with his attorney during a lunch recess in the absence of a demonstration of necessity sufficient to impair his constitutional right to assistance of counsel. In that regard, at 12:50 P.M., in the course of the cross-examination of defendant during his trial for criminal possession of a controlled substance in the first degree, the presiding Justice declared a luncheon recess and instructed the jurors to return at 2:15 P.M. After the jurors had departed, the following colloquy occurred:

"COUNSEL: Your Honor, two quick things. Number 1, is the Court telling me I can't speak to Mr. Enrique now, or can I speak to him?

"THE COURT: There is a Court of Appeals case, Narajan [sic], and the way I read it it is within my discretion not to allow it. If you want to tell me what you would like to say or how long you would like to say it, I might entertain that, but if you want to—

"DEFENSE COUNSEL: I would rather not.

"THE COURT: Well, then, based on my reading of that case, then the answer is no, and I will get you the citation and we'll see if we can put it on the record."

Then, a discussion ensued with respect to the request by defendant's lawyer to call a particular witness to testify concerning his client's work history. The court refused to allow the evidence on the ground that it was merely collateral, counsel excepted, and the case was recessed for lunch. After the recess, the discussion pertaining to the right of defendant to consult with his attorney was resumed.

"THE COURT: All right, we are back on the record. Do you want to say something about any ruling that I have made at this time. . .?

"DEFENSE COUNSEL: Yes, Judge, before we broke for lunch the Court directed that I not speak to Mr. Enrique, citing a Court of Appeals case, People v. Narayan, which the Court was gracious to—

"THE COURT: Where is the interpreter?

"OFFICIAL INTERPRETER: Coming right in, Judge.

"DEFENSE ATTORNEY:—gracious enough to allow me to see a copy of. I frankly was not familiar with case before seeing it. It seems to me that the facts in this case, which are a little difficult to devine [sic], because it's a very short memorandum opinion, at least to me, suggest that the court wasn't terribly

comfortable with the decision where it said that it is going so far to point out that the lower court ultimately reversed itself and gave counsel a short period of time to speak to his client before he began testifying anew. The thrust of that case, in my opinion, involved whether or not conferring with your client is going in some way to interrupt or disrupt the proceedings. We were at a position where we were ready to break for lunch, and I would have had the benefit of some time between ten to one and 2:15 to speak to him.

."The Court asked me what I wanted to speak to him about. I at that time continued to feel somewhat uncomfortable telling the Court what I wanted to speak to him about. At this point I want to say that while I still don't want to get into it, I would want to say that one item was strictly a procedural item on how to conduct himself as a witness—things that I told him before, things that I wished to reinforce in his mind, because of the obvious language difficulties; and one thing was something of a substantive nature which involves something that he did testify to earlier but nothing that I am anticipating be raised in the future.

"I know it is a little cryptic, what I am saying, but that is the best that I am willing to do at this point, because I take exception to the Court's ruling.

"THE COURT: The ruling stands. The Court did say we recognize too, that the district attorney cannot freely interrupt the examination. That is your point. My point is that counsel cannot impart to his client anything with regard to anticipated line of questioning. I don't think it is appropriate. That is the ruling."

It should be noted that the jury was not reconvened until 2:54 P.M., so that the halt in the proceedings lasted approximately two hours.

In *People v Narayan* (58 NY2d 904) defendant's cross-examination was interrupted in the afternoon, in part, to enable the trial court to undertake legal research relating to the People's questioning. The next morning, the research having apparently been completed, the court, at the conclusion of a lengthy sidebar conference, permitted the inquiry. At this point, the defense attorney, before defendant had returned to the witness box, asked to speak with his client. The court, noting that defendant was still on the stand, declined to allow the consultation "while he's testifying". The Court of Appeals, in affirming the decision of the Appellate Division finding no reversible

impropriety, observed in *People v Narayan (supra,* at 906) that:

"With no intention to diminish the constitutional stature and significance of a defendant's right to consult with his attorney during the course of his trial, we recognize, too, that the attorney cannot be permitted freely to interrupt examination to permit him to counsel his client with respect to an anticipated question or line of questioning. The proper resolution lies within the sound discretion of the trial court. We agree with the majority at the Appellate Division that there was no abuse of such discretion by the trial court in this instance. While it is true that defendant was not physically sitting in the witness chair, in a functional sense his cross-examination had been interrupted to afford the trial court an opportunity to make a considered evidentiary ruling. That ruling having been made, it was not error to have directed that the cross-examination then continue without further interruption, particularly where a negative answer to the permitted question would have foreclosed further inquiry on the subject.

" 'This is not to say that defendant's attorney in the instant case did not, or that defendants' attorneys generally will not, realize the impropriety of advising defendant how to answer such a question. Rather, it is to say that it is not error for the Trial Judge in such a situation to make the ruling here made preventing conference until questioning on the issue has been concluded.' (54 NY2d 106, 117 [MEYER, J., concurring].)"

However, the fact that the Court of Appeals did not perceive an abuse of discretion by the court in *People v Narayan (supra)* wherein the Judge refused to allow defense counsel to further delay cross-examination by conferring with his client prior to the latter's resuming the witness chair, does not mean that any communication between defendant and his lawyer may be precluded so long as it takes place during defendant's examination and the ban applies to a pause in the proceedings that is less than an overnight recess *(see, Geders v United States,* 425 US 80). Indeed, the court in the instant matter failed to articulate any reasons whatever for precluding consultation between defendant and his attorney; he merely relied upon the existence of *People v Narayan (supra).* Accordingly, the court simply announced that in order to be permitted to speak to his client, counsel would have to explain what he would like to discuss with defendant and how long their conversation would take. In effect, the trial court construed

*People v Narayan (supra)* as enabling the court automatically to disallow communication under any and all circumstances regardless of whether or not the consultation between counsel and his client would be likely to disrupt the orderly flow of the cross-examination. Thus, the decision in *People v Narayan (supra)*, instead of being considered as an aid to assess the propriety of discretionary court rulings, was deemed by the Trial Justice to be a carte blanche to prevent a defendant from invoking his constitutional right to counsel during a recess that is less than overnight.

Although a defendant's right to consult with his attorney is not absolute *(Perry v Leeke,* 488 US 272; *People v Hilliard,* 73 NY2d 584), such right should certainly be strictly protected. Therefore, in *People v Hilliard (supra),* the Court of Appeals reversed a conviction in a situation in which defendant therein, while being arraigned, refused to comply with the court's directive that he quiet down and, as a consequence, was found in contempt of court and denied contact with his attorney for a period of 30 days. In the opinion of the Court of Appeals, the court's order had been purely punitive and without justification and constituted error so serious that it affected defendant's representation in such a way that the mistake could not be corrected by a new trial. Similarly, in *Geders v United States (supra),* the United States Supreme Court held that a trial court prohibition that the accused refrain from conferring with counsel during a 17-hour overnight recess between the accused's direct and cross-examination, imposed because of concern for improper coaching of the accused's testimony, violated the Sixth Amendment right to counsel. The Supreme Court acknowledged that while a trial court possesses the discretion to order nonparty witnesses not to discuss their testimony with anyone else, a defendant is not in the same position as other witnesses, and an overnight ban upon attorney-client consultation might interfere with critical communications involving the significance of the day's events, tactical decisions to be made and various trial strategies to be pursued. Under these circumstances, the Supreme Court concluded that the prosecution's desire to cross-examine the accused without the intervention of the defense attorney and the risk of improper coaching had to be resolved in favor of the accused's right to counsel.

In *Perry v Leeke (supra)* the Supreme Court reaffirmed an accused's right of unrestricted access to counsel on trial-related matters during an overnight recess even in the absence

of any showing of prejudice. However, the court proceeded to distinguish the situation of an overnight recess from that of a short, 15-minute break so that the trial court's direction to the accused, at the conclusion of his direct testimony, that he avoid talking to anyone, including his lawyer, was deemed not to constitute an abuse of discretion. As the Supreme Court explained *(Perry v Leeke, supra,* at 280-282):

"We are persuaded, however, that the underlying question whether petitioner had a constitutional right to confer with his attorney during the 15-minute break in his testimony—a question that we carefully preserved in *Geders*—was correctly resolved by the South Carolina Supreme Court. Admittedly, the line between the facts of *Geders* and the facts of this case is a thin one. It is, however, a line of constitutional dimension. Moreover, contrary to the views expressed by the dissenting member of the South Carolina Supreme Court * * * it is not one that rests on an assumption that trial counsel will engage in unethical 'coaching.'

"The distinction rests instead on the fact that when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying. He has an absolute right to such consultation before he begins to testify, but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel's advice.

"The reason for the rule is one that applies to all witnesses —not just defendants. It is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties until the trial is completed. Such nondiscussion orders are a corollary of the broader rule that witnesses may be sequestered to lessen the danger that their testimony will be influenced by hearing what other witnesses have to say, and to increase the likelihood that they will confine themselves to truthful statements based on their own recollections. The defendant's constitutional right to confront the witnesses against him immunizes him from such physical sequestration. Nevertheless, when he assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well. Accordingly, it is entirely appropriate for a trial judge to decide, after listening to the direct examination of any witness, whether the direct examination of any witness, whether the defendant or a nondefendant, that cross-examination is more likely to elicit truthful responses if it goes

forward without allowing the witness an opportunity to consult with third parties, including his or her lawyer."

The Supreme Court pointed out that its ruling did not mean that Judges must forbid a defendant from conferring with his lawyer during brief recesses, simply that the Federal Constitution does not compel every trial court to allow the defendant to communicate with his counsel while his testimony is in progress where the court believes that "there is a good reason to interrupt the trial for a few minutes" *(Perry v Leeke, supra,* at 285). Thus, the Supreme Court asserted, the question of whether to permit consultation is a matter for the discretion of individual Trial Judges or State law. It is significant that the Supreme Court did not define the word "brief" but, as indicated by a footnote reference, it apparently considered a 30-minute recess to be sufficiently abbreviated to allow the trial court to foreclose a defendant's access to counsel.

Consequently, the line between a break of 30 minutes duration, on the one hand, and a recess lasting overnight, on the other, presents a gray area which has not been definitively settled. If a Trial Judge may prohibit a defendant from speaking with his or her attorney during a recess of 30 minutes or less, but may not forbid such consultation overnight, what about a 40-minute break? A 90-minute recess? One lasting four hours? What if the cross-examination extends over several days or more, and there are multiple luncheon recesses? Or, indeed, the situation with which we are confronted here, a two-hour lunch recess? Certainly, the authority is divided with respect to this issue *(see,* Annotation, *Trial Court's Order that Accused and His Attorney Not Communicate During Recess in Trial as Reversible Error Under Sixth Amendment Guaranty of Right to Counsel,* 95 ALR Fed 601, for a detailed discussion of this subject, including an extensive survey of relevant State and Federal case law).

The fact is that under existing case law, it is unclear exactly how long a trial court may forbid a defendant from conferring with counsel without violating the latter's Sixth Amendment right to counsel. In any event, a lunch recess, particularly a two-hour one, is plainly something more than the brief 15-minute break that occurred in *Perry v Leeke (supra)* and, accordingly, a ban on communications between defendant and his lawyer for that period constitutes a more severe curtailment of the right to counsel. Moreover, as the foregoing analysis demonstrates, there is no requirement, either in Federal or State case law, that the trial court

restrict a defendant's access to counsel even during the briefest of recesses. What appears to be crucial in that regard is whether the court's action was reasonable under the prevailing circumstances.

Applying this rationale, an examination of the record herein does not demonstrate that the case was proceeding in such a manner that permitting defendant to consult with his attorney would interfere with the rhythm of the trial or in any way hamper the progress of the prosecutor's cross-examination. Instead, the court impermissibly imposed upon the defense attorney the burden of advising the court of the precise content of what he intended to discuss with his client. Thus, the court conditioned counsel's speaking with his client upon the former's revealing what he would "say" to defendant and "how long [he] would like to say it". The second question is irrelevant, and the first constitutes an infringement upon the attorney/client relationship that is of constitutional dimension.

Certainly, a lawyer should not be compelled to divulge to a Judge and prosecutor in open court the specific subject matter of his proposed conversations with defendant in order to be able to communicate with his client. At a minimum, it would place the District Attorney at an unfair advantage to know the strategy and other preparations contemplated by the defense. Rather, no restriction on the right to counsel may be countenanced unless the court expressly tailors the limitation to prohibit only discussion relating to the point upon which the defendant was being examined when the recess was announced; in this instance, the purpose of his visit to the apartment in which he was arrested. According to the Court of Appeals in *People v Narayan (supra)* " 'it is not error for the Trial Judge in such a situation to make the ruling here made preventing conference until questioning on the issue has been concluded' " (58 NY2d, at 906; emphasis added).

Contrary to the majority's contention that counsel has no right to confer with defendant about the latter's testimony while he is testifying, this is simply an incorrect statement of the law. In *Perry v Leeke (supra)*, the United States Supreme Court determined merely that a Trial Judge may, at his or her discretion, prohibit an attorney from speaking with a defendant if the case is briefly recessed at the time that the defendant is on the stand. Similarly, counsel may not interrupt the course of the proceedings to communicate with his client. However, when the defendant's testimony is halted by

more than a brief break, such as a weekend or overnight recess, there is no authority at all which would enable the court to prevent or even limit consultation between a lawyer and client *(see, Perry v Leeke, supra; Geders v United States, supra)*. The fact is that *People v Narayan (supra)* does not confront the sort of restriction that the majority's position would seem to tolerate, and the Second Department, in the only appellate case in New York State dealing with this issue, *People v Phillips* (77 AD2d 927), has declared that "[w]e are also of the view that the trial court's prohibition of all communication between defendant and his attorney during a luncheon recess which interrupted defendant's cross-examination, to which defendant objected, was overbroad and violative of defendant's right to the assistance of counsel" (at 928).

The record of the instant matter reveals that at the moment that the court recessed the trial for lunch, the cross-examination of defendant had not reached a crucial point. Immediately prior to the pause in the proceedings, the prosecutor, after preliminary inquiry as to defendant's employment history, was beginning to focus on the reason for defendant's presence in the apartment in which he was arrested. This portion of the transcript consumes some 12 pages. Following the resumption of defendant's testimony, the District Attorney asked questions that took up another 18 pages of transcript. In reviewing the court's exercise of discretion in denying access of counsel to a client, a factor to be considered, in addition to the length of the expected restriction of communication, is whether the interrogation of defendant is at a critical stage or within range of its inflicting damage upon his credibility. Therefore, on this record, for the court totally to preclude all consultation, including even discussion pertaining to "procedural" questions, as indicated by the defense attorney, or other nonsubstantive matters, cannot be justified and constitutes an abuse of discretion.

The majority also describe the attorney-client "privilege" as a deterrence to the truth-finding process, which, presumably, the trial court may limit in the interest of uncovering the facts. In reality, this "privilege", unlike, for example, the doctor/patient or spousal privilege, cannot be divorced from the fundamental constitutional right to counsel. At issue in *Matter of Priest v Hennessy* (51 NY2d 62), cited by the majority to support the proposition that such "privilege" is an obstacle to truth-finding, was a purported confidential communication which petitioner therein sought to protect from dis-

closure; that case simply has no relevance to the present situation. In order to justify abridgement of such a basic constitutional right as the Sixth Amendment, the court should be obliged to provide reasons adequate to support its decision rather than, as the majority seem to suggest, compel the defense to explain why this right should not be restricted so that the People may supposedly pursue their truth-finding undisturbed by defendant's communication with counsel.

Further, the majority claim that the colloquy between the court and counsel merely serves to confirm that defendant's lawyer wished to discuss only his client's testimony with him, a subject about which, as previously noted, they wrongly assert that he had no right to confer while defendant was testifying. However, defense counsel's comments concerning the subject matter of an anticipated conversation between him and his client were voiced only after lunch and the resumption of defendant's case, and the court's ban was imposed prior to the recess. Significantly, it is inaccurate that defendant's lawyer asserted that he desired to speak with his client about the latter's prospective testimony; what he actually stated was that: "[a]t this point I want to say that while I still don't want to get into it, I would want to say that one item was strictly a procedural item on how to conduct himself as a witness—things that I told him before, things that I wished to reinforce in his mind, because of the obvious language difficulties; and one thing was something of a substantive nature which involves something that he did testify to earlier but nothing that I am anticipating be raised in the future." The trial court, without further inquiry, then reiterated his previous ruling barring any conversation between defendant and his attorney.

If the Trial Judge had cautioned counsel about the impropriety of conferring with his client concerning the exact issue about which he was being questioned by the prosecutor before the recess was called, such an admonition would have been appropriate. Of course, the most pragmatic and reasonable approach for a Trial Judge to take in handling a situation in which cross-examination is at a critical stage is to delay calling a recess until the questioning on a particular issue has run its course. Yet, to preclude communication entirely and relating to any matter at all, and to do this without any showing that such a broad prohibition was warranted, was, I believe, an abuse of the trial court's discretion and sufficiently

significant to require reversal of the judgment of conviction and a new trial.

KUPFERMAN, J. P., ASCH and KASSAL, JJ., concur with SULLIVAN, J.; MILONAS, J., dissents in an opinion.

Judgment, Supreme Court, New York County, rendered June 24, 1987, affirmed.