[677 NYS2d 100]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DIONESCIO MOJICA, Also Known as DIONISIO MOJICA, Appellant.

First Department, July 9, 1998

## APPEARANCES OF COUNSEL

*Daniel R. Wanderman* of counsel, Bronx (*Stuart P. Levy* on the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for respondent.

*Jay Louis Weiner,* New York City, for appellant.

## OPINION OF THE COURT

Nardelli, J.

This case raises the issue of whether the trial court deprived defendant of his right to counsel guaranteed by the Federal and State Constitutions by instructing his attorney, at the beginning of trial, not to inform defendant of the fact that his cousin, Manuel Mojica, would be a witness against him, until shortly before Manuel Mojica would be called to testify.

To examine the applicable legal principles, it is necessary to state the facts that led to the application of the prosecutor seeking the protective order relating to the testimony of Manuel Mojica. Defendant and Roberto Torres (known also by the nickname "Noonie") met defendant's cousin, Manuel, and defendant asked Manuel if he would drive him around as a favor and told Manuel that he would provide the car. Manuel agreed and while the two were in the car he heard them talking about committing a robbery. Torres, who testified against defendant, said that defendant, who was armed with a 9-millimeter pistol, gave him a similar gun and told him they were going to "pick up some money" at the apartment of Andre Nazario. Identify-

ing themselves as Con Edison workers, defendant and Torres pushed their way into the apartment when Nazario opened the door. Inside, Torres pointed his gun at Blanca Rivera, forcing her into the bedroom and onto the floor. The rest of the eight occupants of the apartment were herded into the bedroom by the defendant and Torres. Defendant pointed his gun at Nazario and accused him of being responsible for the shooting of defendant's brother, Cito. Defendant then told Torres that they had to kill everyone in the apartment. Defendant then fired at Nazario, shooting him twice, and the two opened fire on the other occupants, stopping only five minutes later when they believed all the victims were dead. Four of the unfortunate occupants were indeed dead: Jecenia Rivera, who had unsuccessfully pleaded for her life because she had a young child, Elizabeth Wong, Miguel Natal and Angela Lopez. Andre Nazario, Blanca Rivera and Ferdinand DeLaRosa were seriously wounded. Felix Camacho apparently fell under the bodies of the others and was unwounded. All four of the survivors testified against defendant.

The two shooters went back to the car driven by Manuel Mojica and, on the ride back, Manuel heard Torres say that he had a "bad feeling" that some of the victims in the apartment might still be alive.

Defendant was arrested in Buffalo. On the trip back to New York, although his escort, Detective Fagan, informed him he would not be questioned at that time and told him to remain silent, defendant insisted on speaking of his role in the murders. He stated that "Noonie" (Torres) shot first, but also admitted shooting at the occupants of the apartment "because they shot at me."

Just prior to the picking of the jury, the court noted that the District Attorney had made an application to withhold the name of a prospective witness (Manuel Mojica) when the list of prospective witnesses was read to the panel. The prosecutor informed the court that, although he had assumed "there would be no problem" with releasing the list of witnesses, Nazario had received a threat from an individual on behalf of defendant and his family that harm would come to Nazario if he testified against defendant. Further, defendant had personally threatened the life of Torres and had offered $150,000 for a "contract" on his life. The prosecutor also noted that defendant was a member of a feared prison gang, the "Latin Kings", "that has been known to prey on other individuals there for testifying against others and various other acts." With this back-

ground, the prosecutor noted that defendant was not aware that Manuel, his cousin, would be testifying against him and if defendant knew of this, he would contact his family and have them threaten Manuel in the same manner as the other witnesses. The prosecutor pointed out the obvious—that defendant had killed four people and attempted to kill four others so that there would be no witnesses to an attempted robbery. The court noted that defense counsel had objected to the court's stated intention to issue a protective order directing counsel not to reveal to defendant that Manuel was a prospective witness and that the District Attorney had made an application to strike Manuel's name from the list of prospective witnesses read to the panel. Counsel told the court it would honor the direction not to discuss the matter with defendant. However, defense counsel objected, "it deprives the defendant of full counsel, when I'm forced to have vital information over which I have no idea what this person would testify to and I think I have to discuss it with my client and you are depriving me of doing that." In response, the court ruled: "When the witness is going to be called or shortly before the witness is to be called, the District Attorney is going to alert the court so that the court can alert counsel so that he may have all necessary materials and information and that [he] can properly then discuss it with his client, but the District Attorney made a *precise limited application here this afternoon and that precise and limited application has been granted.*" (Emphasis added.)

The next day, January 10, the jury voir dire was commenced and completed. On January 11, the People's case began with the testimony of the two police officers who responded to the apartment after the shooting and a ballistics expert. The next day, following defense counsel's comment that he appreciated the efforts of the prosecutor in giving him advance notice of the witnesses expected to be called on the coming day, the police witnesses finished testifying and Torres was called. He testified to his participation in the murders and attempted murders and identified Manuel Mojica as the person who drove the car that day. The next day, Friday, January 13, the first witness was a police ballistics expert and the next two witnesses testified as to their identification of the bodies of certain of the murder victims. Then Blanca Rivera, one of the survivors who was also the mother and aunt, respectively, of two of the murder victims, testified. In the afternoon, Felix Camacho, 15 years old at the time of the shooting, testified, and, following his testimony, the case was adjourned for the holiday weekend

until Tuesday, January 17. On Tuesday, the first witness called was Manuel Mojica. Following his direct testimony, the court declared a recess. The prosecutor noted that since the witness had committed no crime, no deal was ever considered, and that Manuel had voluntarily given a statement regarding what he knew about the crime, a copy of which had been previously turned over to the defense counsel. After a recess, counsel cross-examined Manuel regarding his relationship with defendant, his work for Andre Nazario in the drug business, his knowledge regarding the intent of defendant and Torres prior to the shooting and his motive for going to the authorities and testifying at trial.

Defendant, upon appeal, asserts that Manuel Mojica was an important witness and, therefore, it was necessary that defendant and defense counsel be permitted to discuss how Mojica's expected testimony would affect the defense strategy, with respect to the opening statement, cross-examination of Mojica and cross-examination of the witnesses testifying before Mojica, especially Torres. Defendant asserts that the court had reasonable alternatives to the "gag order" imposed on counsel, including conducting a *Hinton* hearing (*People v Hinton*, 31 NY2d 71, *cert denied* 410 US 911), notifying the Department of Correction not to allow defendant to make any telephone calls or receive visitors other than counsel until after Mojica testified or putting defendant in administrative segregation until after Mojica testified.

Even if any of these suggested alternatives may have been viable, counsel did not offer them at trial for the court's consideration and, thus, has not preserved the issue of alternative courses of action the court might have taken for appellate review (*see, People v Ayala*, 90 NY2d 490, *cert denied* — US —, 139 L Ed 2d 413 [defendant has burden of suggesting alternatives to courtroom closure based upon safety concerns]). In addition, contrary to the contention of defendant, the testimony of Manuel Mojica was of relatively minor importance. Manuel was not an eyewitness and had no first-hand knowledge of the killings as other witnesses did. Moreover, his name was mentioned many times during the testimony of Torres and defense counsel had the opportunity to cross-examine Torres regarding Manuel's role in the crime without revealing that Manuel would be called as a witness.

While the People claim that defendant has waived the constitutional claim that the court's protective order deprived him of his right to counsel under both the New York State (art

I, § 6) and Federal (Sixth Amendment) Constitutions, a fair reading of the record indicates that defendant, at the least, preserved a claim of violation of his right to counsel guaranteed by the State Constitution. In this connection, this Court, in a case involving a ban on consultation between an attorney and his client during a two-hour lunch recess during the defendant's testimony, pointed out: "Nor do we see any reason why New York courts, in interpreting the State Constitution (art I, § 6), should reject the Federal constitutional standard set forth in *Perry [v Leeke,* 488 US 272]. * * * Defendant, however, fails to offer any convincing reason for establishing a State constitutional rule different from the Federal one; he neither suggests any 'interpretative' basis, such as significant distinctions in the text, structure or historical background between the two documents, for construing the Federal and State Constitution provisions differently *(see, People v Alvarez,* 70 NY2d 375, 378, citing *People v P. J. Video,* 68 NY2d 296, 302) nor, in arguing that the State provision should 'be given a unique reading,' advances any significant 'noninterpretive' consideration, such as the 'distinctive attitudes' of New York residents toward the right at issue *(People v Alvarez, supra,* at 378-379)." *(People v Enrique,* 165 AD2d 13, 21, *affd for reasons stated by Sullivan, J.,* 80 NY2d 869.)

The Sixth Amendment to the United States Constitution provides that in all criminal cases, the accused shall have the assistance of counsel for his defense. Article I (§ 6) of the State Constitution provides, *inter alia,* "In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions". These similar constitutional rights have been interpreted as prohibiting a total ban on communication between counsel and accused for extended periods of time during a defendant's testimony. *(Geders v United States,* 425 US 80 [involving an overnight recess total ban on communication]; *People v Joseph,* 84 NY2d 995 [involving a weekend total ban]; *People v Hilliard,* 73 NY2d 584 [involving a 30-day total ban following arraignment]; *People v Blount,* 159 AD2d 579, *affd* 77 NY2d 888 [involving an overnight total ban]).

However, contrary to the position advanced by defendant, the right to counsel is not absolute and a trial court is empowered to impose reasonable rules on the defendant's access to his counsel in order to control the conduct of the trial *(Geders v United States, supra,* at 91; *People v Hilliard, supra,* at 586; *People v Enrique, supra,* at 17; *Perry v Leeke, supra,* at 284).

Defendant contends that Manuel Mojica did not testify until 7½ days after the court imposed the "gag order." However, it is important to note that excluding the day devoted to the jury voir dire process and a three-day weekend recess, the ban in question covered only three days of testimony. Moreover, the protective order did *not prohibit* counsel from *all* communication with his client during recesses in the trial, but was limited *solely* to shielding the identity of a single witness until shortly before that witness was to testify. In addition, it provided for adequate advance notice to defendant of the witness's identity so that the defendant could assist in his defense and counsel would have the opportunity to properly cross-examine the witness.

The Second Department has dealt with this issue of a "gag order" being placed on defense counsel to protect the safety of potential witnesses and upheld restrictions on discussions between defense counsel with their clients. Thus, in a case where the trial court directed counsel not to discuss with the defendant the increased likelihood a potential witness would testify, the Appellate Division, Second Department, has stated: "The defendant claims that the court's instruction violated his right to the effective assistance of counsel. We disagree. Not every restriction upon a defendant's access to his attorney constitutes reversible error per se. The ruling in issue here was of very limited scope. The court did not prohibit all conversations between the defendant and his attorney, but only discussion relating to the likelihood that the witness in question would testify [citations omitted]" (*People v Morgan*, 176 AD2d 359, 359-360, *lv denied* 79 NY2d 861). Thereafter, the Second Department held in *People v Martinez* (204 AD2d 489, 490, *lv denied* 84 NY2d 869): "The defendant also contends that he was denied his right to counsel when the trial court conditioned the defense counsel's attendance at the in camera hearing upon counsel's agreement not to discuss the hearing with the defendant. * * * In any event, the defendant's contention is without merit. A defendant's right to counsel is not absolute and a trial court may impose reasonable rules on the defendant's access to counsel in order to control the conduct of the trial (*see, People v Hilliard*, 73 NY2d 584, 586; *People v Enrique*, 165 AD2d 13, 16-17 [, *affd* 80 NY2d 869]). In the present case, there was evidence that at least two of the prosecution witnesses had been threatened and offered money not to testify. Accordingly, the trial court's limited restriction on the defense counsel's discussion with the defendant regarding the in camera hearing,

where the prosecutor disclosed the identity and expected testimony of two prospective witnesses, was reasonable and did not deprive the defendant of his right to counsel".

Likewise, in the circumstances present herein, where there was a founded fear that a prospective witness for the prosecution would be subject to intimidation, it was an appropriate exercise of discretion for the court to issue an order protecting the identity of the witness until shortly before he was scheduled to testify, while permitting defendant full and complete access to his attorney on all other matters. The court also insured that defendant would get the name of the witness and documents with sufficient time to consult with counsel and to allow counsel to prepare for cross-examination of the witness after such consultation. Consequently, defendant's right to counsel was not violated by the court's directive.

■ As conceded by the People with respect to the sentences imposed, the applicable law at the time the attempted murders were committed by defendant directed a minimum sentence of one third, rather than one half, the maximum term imposed, and, therefore, the minimum term on each attempted murder conviction must be reduced to 8⅓ years (*see, People v Drew*, 147 AD2d 411; Penal Law § 70.02 [former (4)]).

Accordingly, the judgment of the Supreme Court, Bronx County (John Collins, J.), rendered February 7, 1995, convicting defendant, after trial by jury, of murder in the second degree (four counts), and attempted murder in the second degree (three counts), and sentencing him to consecutive terms of 25 years to life on the murder convictions and 12½ to 25 years on the attempted murder convictions, should be modified, on the law, to the extent of reducing the minimum term on each sentence imposed on the attempted murder convictions to 8⅓ years, and otherwise affirmed.

ELLERIN, J. P., WILLIAMS and ANDRIAS, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered February 7, 1995, modified, on the law, to the extent of reducing the minimum term on each sentence imposed on the attempted murder convictions to 8⅓ years, and otherwise affirmed.